FILED
 Sep 14, 2018
 08:42 AM(CT)
 TENNESSEE COURT OF
 WORKERS' COMPENSATION
 CLAIMS

 TENNESSEE BUREAU OF WORKERS’ COMPENSATION
 IN THE COURT OF WORKERS’ COMPENSATION CLAIMS
 AT MEMPHIS

Michael Womble, ) Docket No. 2018-08-0022
 Employee, )
v. )
Uncle Dave’s Auto Repair, Inc., ) State File No. 29188-2017
 Employer, )
And )
Benchmark Insurance Co., ) Judge Deana Seymour
 Carrier. )

 EXPEDITED HEARING ORDER

 This case came before the Court on August 17, 2018, upon Michael Womble’s
Request for Expedited Hearing. The central legal issue is whether Mr. Womble is likely
to succeed at a hearing on the merits in proving entitlement to temporary disability
benefits. The Court holds he is entitled to temporary partial disability (TPD) benefits
from September 29, 2017, to April 8, 2018.

 History of Claim

 Mr. Womble worked as a tow truck operator for Uncle Dave’s. 1 On April 16,
2017, he kicked a car tire with his right foot, and his left knee popped and buckled. An
emergency room physician diagnosed him with a left-knee strain a week later. Uncle
Dave’s offered an orthopedist panel, and Mr. Womble chose Dr. Tyler Cannon as his
authorized treating physician.

 Dr. Cannon diagnosed a left-knee meniscus tear and restricted him to sedentary
work. Uncle Dave’s provided work within the restrictions, earning less than his usual
wages. Dr. Cannon surgically repaired Mr. Womble’s knee on May 11 and restricted him

1
 Mr. Womble appeared by telephone for this hearing since he lives in Texas and was recovering from
recent knee surgery.

 1
from all work for one week. Mr. Womble returned to sedentary work with no driving
until June 19, when Dr. Cannon removed all restrictions at his request.

 The following week, Mr. Womble made a service call to tow a disabled van. His
wife rode with him. The stranded driver and his passenger could not ride together in the
truck cab, since Mr. Womble and his wife occupied two of the three seats. He gave them
a choice: call someone to pick them up, or ride in their vehicle on the back of the tow
truck. According to Mr. Womble, they chose the latter, so they rode in their disabled van
attached to Uncle Dave’s tow truck. While doing so, the passengers videoed the ride.

 Dave Steward, owner of Uncle Dave’s, saw the video, which went viral. He fired
Mr. Womble on July 3 for misconduct and negative publicity. Mr. Womble’s temporary
total disability (TTD) benefits ended when Dr. Cannon released him at maximum
medical improvement (MMI) without restrictions on July 18 at Mr. Womble’s request.

 The next day, Mr. Womble moved to Texas. He continued to have knee problems
that prevented him from working, so Uncle Dave’s provided a Texas panel of physicians
from which he selected orthopedist Dr. Marvin Van Hal.

 During his first visit on September 29, Mr. Womble told Dr. Van Hal that he could
not work because of left- and right-knee pain. Dr. Van Hal thought he “[was] not at MMI
as he is needing further care.” Mr. Womble complained of right-knee swelling, which Dr.
Van Hal attributed more than fifty percent to his left-knee injury. Dr. Van Hal restricted
him from kneeling, squatting, climbing and repetitive standing and walking. He
recommended a repeat left-knee arthroscopy.

 Dr. Van Hal performed the arthroscopy on April 9, 2018, and restricted Mr.
Womble from work. Uncle Dave’s resumed weekly TTD payments of $594.73 and
continued payments through the date of the Expedited Hearing. 2

 At the hearing, Mr. Womble testified that Uncle Dave’s had no written policy
prohibiting him from transporting the stranded motorists as he did. He further stated that
he did not break the law. Mr. Womble testified that Uncle Dave’s unwritten policy
required him to remove personal passengers from the truck to allow paying customers to
ride in the cab. He stated he had room for one paying customer but did not know he had
to provide a seat for the non-paying customer. The paying customer refused to ride in the
cab without his passenger, so he gave them his best options.

2
 The parties stipulated that the correct weekly compensation rate was $605.24 rather than $594.73. Uncle
Dave’s asked for a credit for overpayment of TTD paid before July 18, 2017, against a PPD award or
settlement.

 2
 Mr. Steward agreed Mr. Womble did not violate the law transporting the
customers as he did. However, Uncle Dave’s argued that Mr. Womble was aware of its
unwritten policy to provide customers priority seating. Mr. Steward testified that he
notified his employees, including Mr. Womble, of Uncle Dave’s policy to provide
customers priority seating in the cab of their truck and to ensure the safety of its
customers.

 Contested Issues

 The parties disagreed on Mr. Womble’s entitlement to temporary disability
benefits from the day he moved to Texas, July 19, 2017, until he underwent the second
knee surgery and Uncle Dave’s reinstated TTD on April 9, 2018. Mr. Womble argued
that even though Dr. Cannon released him at MMI without restrictions on the day before
he moved to Texas, his knee pain continued. In late September, Dr. Van Hal determined
Mr. Womble had not reached MMI. Mr. Womble also argued that Mr. Steward unjustly
fired him. He contended that he did not violate the law and complied with customary
towing practices.

 Uncle Dave’s contended Mr. Womble was not entitled to TTD since no physician
totally restricted him from work during the period for which he requested benefits. Uncle
Dave’s argued Dr. Cannon released Mr. Womble at MMI on July 18 without restrictions.
He was not medically restricted again until Dr. Van Hal restricted his activities on
September 29. Uncle Dave’s accommodated his work restrictions until his termination
and would have continued to do so but for his termination.

 Uncle Dave’s also requested a credit for overpaid TTD. Mr. Womble worked four
weeks as a dispatcher for less pay after his injury. During that time, Uncle Dave’s paid
temporary total disability benefits and requested a credit under Tennessee Code
Annotated section 50-6-207(1)(B) (2017) for the overpayment.

 Findings of Fact and Conclusions of Law

 Standard Applied

 Mr. Womble must prove the essential elements of his claim. Scott v. Integrity
Staffing Solutions, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). He
must present sufficient evidence for the Court to determine he is likely to prevail at a
hearing on the merits. McCord v. Advantage Human Resourcing, 2015 TN Wrk. Comp.
App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

 3
 Temporary Disability Benefits

 An injured worker is eligible for temporary total disability benefits if: (1) the
worker became disabled from working due to a compensable injury; (2) there is a causal
connection between the injury and the inability to work; and (3) the worker established
the duration of the period of disability. Jones v. Crencor Leasing and Sales, 2015 TN
Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015).

 Mr. Womble presented no medical proof to establish total disability during the
dates at issue, July 19, 2017, to April 29, 2018. To the contrary, Dr. Cannon released him
at MMI with no restrictions on July 18, 2017. Thus, the Court finds Mr. Womble was not
entitled to the requested TTD. However, Dr. Van Hal restricted Mr. Womble to sedentary
work from September 29, 2017, to April 9, 2018, which may entitle him to TPD
benefits. 3

 TPD, distinct from TTD, is available when the temporary disability is not total.
Tenn. Code Ann. § 50-6-207(1)-(2). Specifically, “[t]temporary partial disability refers to
the time during which the injured employee is able to resume some gainful employment
but has not reached maximum recovery.” Jones, at *7. Thus, in circumstances where the
treating physician has released the injured worker to return to work with restrictions prior
to maximum medical improvement, and the employer either (1) cannot return the
employee to work within the restrictions or (2) cannot provide restricted work for a
sufficient number of hours and/or at a rate of pay equal to or greater than the employee’s
average weekly wage on the date of injury, the injured worker may be eligible for
temporary partial disability. Id. at *8.

 However, a termination due to a workplace rule violation may relieve an employer
of its obligation to provide temporary partial disability benefits, provided the termination
was related to the workplace violation. Id. When confronted with such a case, courts must
“consider the employer’s need to enforce workplace rules and the reasonableness of the
contested rules.” Id. at *8-9. An employer will not be penalized for enforcing a policy if
the court determines “(1) that the actions allegedly precipitating the employee’s dismissal
qualified as misconduct under established or ordinary workplace rules and/or
expectations; and (2) that those actions were, as a factual matter, the true motivation for
the dismissal.” Id. at *9.
 The Court finds Dr. Van Hal restricted Mr. Womble to sedentary work from
September 29, 2017, to April 8, 2018. The Court also finds that Uncle Dave’s could have
accommodated the restrictions at a reduced wage but for his termination on July 3, 2017,
and move to Texas on July 19. 4

3
 Uncle Dave’s resumed TTD payments on April 9 after Dr. Van Hal restricted him from all work.
4
 The average wage for Uncle Dave’s dispatch work was $356.11.

 4
 Turning to the termination, Mr. Womble and Mr. Steward agreed that it stemmed
from Mr. Womble hauling two customers in their disabled vehicle attached to Uncle
Dave’s tow truck. They agreed that the action was legal. They differed on whether he
violated a workplace rule. Mr. Womble offered the paying customer a seat in the cab of
his truck and thought he followed Uncle Dave’s unwritten policy. He also knew he was
within the law to allow the two stranded motorists to ride in their disabled vehicle. Mr.
Womble testified Mr. Steward fired him because a video of the tow showed up on
television.

 To the contrary, Mr. Steward testified that he told all new hires that Uncle Dave’s
policy required safety and customer priority. He explained Mr. Womble violated that
policy when he allowed his wife to ride in the truck cab rather than his two customers. He
also testified Mr. Womble violated policy when he unsafely allowed two customers to
ride in their van attached to his tow truck. However, Mr. Steward admitted that the
negative publicity to Uncle Dave’s primarily motivated the termination.

 Applying Jones to these facts, the Court finds that Uncle Dave’s did not have
“established or ordinary workplace rules and/or expectations” on transporting stranded
customers. Rather, Mr. Steward testified that he told all employees about these unwritten
policies. Mr. Womble believed he conducted a safe, legal tow and provided good
customer service in compliance with Uncle Dave’s unwritten policies. Mr. Steward fired
Mr. Womble primarily because he saw the video of the incident on the local news.

 Based on the totality of the evidence, the Court finds Mr. Womble’s actions did
not constitute misconduct justifying his termination. Therefore, he is entitled to twenty-
seven weeks and three days of TPD benefits from September 29 to April 8. Guided by
Tennessee Code Annotated section 50-6-107(1)-(2), the Court holds TPD for this time
totals $9,946.90. 5

 Credit for Overpaid TTD

 Uncle Dave’s requested credit for TTD overpayment under Tennessee Code
Annotated section 50-6-207(1)(B). That provision allows an employer to take a credit
from the permanent disability award or settlement for overpayment of TTD. Thus, a
credit for the overpayment can only be applied when the compensability and extent of
PPD have been determined.

5
 Subtract the post-injury AWW ($356.11) from the pre-injury AWW (907.81) and multiply the difference
($551.70) by two-thirds for a TPD weekly rate of $367.82 times twenty-seven weeks and three days
totaling $9,946.90.

 5
 IT IS, THEREFORE, ORDERED as follows:

1. Uncle Dave’s shall pay TPD totaling $9,946.90.

2. This matter is set for a Scheduling Hearing on December 10, 2018, at 9:00 a.m.
 Central Standard Time. The parties must call (toll-free) 866-943-0014 to
 participate in the Hearing. Failure to call in may result in a determination of the
 issues without the parties’ participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance
 with this Order must occur no later than seven business days from the date of entry
 of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).
 The Insurer or Self-Insured Employer must submit confirmation of compliance
 with this Order to the Bureau by email to WCCompliance.Program@tn.gov no
 later than the seventh business day after entry of this Order. Failure to submit the
 necessary confirmation within the period of compliance may result in a penalty
 assessment for non-compliance. For questions regarding compliance, please
 contact the Workers’ Compensation Compliance Unit via email at
 WCCompliance.Program@tn.gov.

 Entered September 14, 2018.

 _____________________________________
 JUDGE DEANA C. SEYMOUR
 Court of Workers’ Compensation Claims

 6
 APPENDIX

Technical record:

TR1. Petition for Benefit Determination, filed January 9, 2018
TR2. Dispute Certification Notice, filed May 3, 2018.
TR3. Request for Expedited Hearing, filed July 3, 2018
TR4. Mr. Womble’s affidavit, filed July 9, 2018
TR5. Employer’s Pre-Hearing Brief for Expedited Hearing, filed August 3, 2018
TR6. Employer’s Table of Authorities for Pre-Hearing Brief, filed August 3, 2018, with
 attachments
TR7. Employer’s List of Witnesses and Exhibits for Expedited Hearing, filed August 3,
 2018, with attachments

Exhibit:

 1. Affidavit of Kristi Gant, with attachment
 2. Form C-41 Wage Statement
 3. Mr. Womble’s pay records
 4. Form C-42 Agreement Between Employer/Employee Choice of Physicians
 5. Form C-20 Employer’s First Report of Work Injury or Illness
 6. Mr. Womble’s Personnel File
 7. Qualifying Separation Determination from Division of Employment Security
 8. Video of news clip relating to incident involving Mr. Womble, which can be
 found at http://www.wmcactionnews5.com/Clip/13467404/man-forced-to-ride-in-
 car-as-it-is-towed#.WV2RT-gaY5A.email
 9. Medical records with Table of Contents (Collective)
 10. Dr. Marvin Van Hal’s office notes of August 6, 2018

 7
 CERTIFICATE OF SERVICE

 I hereby certify that a true and correct copy of the foregoing Expedited Hearing
 Order was sent to the following recipients by the following methods of service on this the
 14th day of September, 2018.

Name Certified Via Via Email Address
 Mail Fax Email
David Gordon, X davidg@davidgordonlaw.com
Employee’s Attorney
Jared Renfroe, X jrenfroe@spicerfirm.com
Employer’s Attorney

 _____________________________________
 Penny Patterson-Shrum, Clerk
 Court of Workers’ Compensation Claims
 WC.CourtClerk@tn.gov

 8
 Expedited Hearing Order Right to Appeal:

 If you disagree with this Expedited Hearing Order, you may appeal to the Workers’
Compensation Appeals Board. To appeal an expedited hearing order, you must:

 1. Complete the enclosed form entitled: “Expedited Hearing Notice of Appeal,” and file the
 form with the Clerk of the Court of Workers’ Compensation Claims within seven
 business days of the date the expedited hearing order was filed. When filing the Notice
 of Appeal, you must serve a copy upon all parties.

 2. You must pay, via check, money order, or credit card, a $75.00 filing fee within ten
 calendar days after filing of the Notice of Appeal. Payments can be made in-person at
 any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the
 alternative, you may file an Affidavit of Indigency (form available on the Bureau’s
 website or any Bureau office) seeking a waiver of the fee. You must file the fully-
 completed Affidavit of Indigency within ten calendar days of filing the Notice of
 Appeal. Failure to timely pay the filing fee or file the Affidavit of Indigency will
 result in dismissal of the appeal.

 3. You bear the responsibility of ensuring a complete record on appeal. You may request
 from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of
 the proceedings is to be filed, a licensed court reporter must prepare the transcript and file
 it with the court clerk within ten business days of the filing the Notice of
 Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both
 parties within ten business days of the filing of the Notice of Appeal. The statement of
 the evidence must convey a complete and accurate account of the hearing. The Workers’
 Compensation Judge must approve the statement before the record is submitted to the
 Appeals Board. If the Appeals Board is called upon to review testimony or other proof
 concerning factual matters, the absence of a transcript or statement of the evidence can be
 a significant obstacle to meaningful appellate review.

 4. If you wish to file a position statement, you must file it with the court clerk within ten
 business days after the deadline to file a transcript or statement of the evidence. The
 party opposing the appeal may file a response with the court clerk within ten business
 days after you file your position statement. All position statements should include: (1) a
 statement summarizing the facts of the case from the evidence admitted during the
 expedited hearing; (2) a statement summarizing the disposition of the case as a result of
 the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an
 argument, citing appropriate statutes, case law, or other authority.

For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.
 Filed Date Stamp Here EXPEDITED HEARING NOTICE OF APPEAL
 Tennessee Division of Workers' Compensation
 Docket#: - - - -- -- - --
 www.tn.go v/labor-wfd/wcomp.shtm l
 State File #/YR: - - -- - - --
 wc.courtclerk@tn.gov
 1-800-332-2667 RFA#: _ _ _ _ _ _ _ _____ _

 Date of Injury: - - - -- - - - -
 SSN: _______ _ ______ __

 Employee

 Employer and Carrier

 Notice
 Noticeisg~enthat _ _ _ _ _ _ _~~--~~~~---~~~--------~
 [List name(s) of all appealing party(ies) on separate sheet if necessary]

 appeals the order(s) of the Court of Workers' Compensation Claims at _ __

 -~~~-----~~~~~~~~-to the Workers' Compensation Appeals Board .
 [List the date(s) the order(s) was filed in the court clerk's office]

 Judge___________________________________________

 Statement of the Issues
 Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

 Additional Information
 Type of Case [Check the most appropriate item]

 D Temporary disability benefits
 D Medical benefits for current injury
 D Medical benefits under prior order issued by the Court

 List of Parties
 Appellant (Requesting Party): _____________ .A t Hearing: DEmployer DEmployee
 Address:. _______________________ ______________ ___________

 Party's Phone:.____________________________ Email: _________________________

 Attorney's Name:________________________________ ___ BPR#: - - - - - - - - - - - -

 Attorney's Address:. _ _ _ _ _~~-~~~~----~~---- Phone:
 Attorney's City, State & Zip code: _____________________ ___________ _ _ _ __ _
 Attorney's Email :_ _ _ _ _ _ _ _ __ _ _ _ _ _ _ _ _ __ _ _ _ __ _ _ _ _ _ _ __

 *Attach an additional sheet for each additional Appellant*

LB-1099 rev.4/15 Page 1 of 2 RDA 11082
Employee Name: - - - -- - - -- - - - SF#: _ _ _ _ __ _ _ _ _ DO l: _ __ _ __

Aopellee(s)
Appellee (Opposing Party): _ _ _ _ _ _ _ _.At Hearing: OEmployer DEmployee

Appellee's Address: - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Appellee's Phone:_ _ _ _ _ _ _ _ _ _ _ _ _ _ _.Email:_ _ _ _ _ _ __ _ _ _ _ _ __

Attorney's Name:_ _ _ _ _ _ _ _ _ _ _ _ _ __ _ _ _ _ _ _ BPR#: - - - - - - - -
Attorney's Address:._ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ Phone:

Attorney's City, State & Zip code: - - - -- - - - - - - - - - - - - - - - - - - -- -
Attorney's Email:._ _ _ _ __ _ __ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ __

 * Attach an additional sheet for each additional Appellee *

CERTIFICATE OF SERVICE

I, certify that I have forwarded a true and exact copy of this
Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties
and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of
Board of Workers' Compensation Appeals on this the day of__, 20_ .

[Signature of appellant or attorney for appellant]

LB-1099 rev.4/1S Page 2 of 2 RDA 11082
 .
ll .I

 Tennessee Bureau of Workers' Compensation
 220 French Landing Drive, 1-B
 Nashville, TN 37243-1002
 800-332-2667

 AFFIDAVIT OF INDIGENCY

 I, , having been duly sworn according to law, make oath that
 because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be
 waived. The following facts support my poverty.

 1. Full Name:_ _ _ _ _ _ _ _ _ _ __ 2. Address: - - - - - - - - - - - - -

 3. Telephone Number: - - - - - - - - - 4. Date of Birth: - - - - - - - - - - -

 5. Names and Ages of All Dependents:

 - - - - - - - - - - - - - - - - - Relationship: - - - - - - - - - - - - -

 - - - - - - - - - - - - - - - - - Relationship: - - - - - - - - - - - - -

 - - - - - - - - - - - - - - -- - Relationship: - - - - - - - - - - - --

 - - - - - - - - - - - - - - - - - Relationship: - - - - - - - - - - - - -

 6. I am employed by: - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - , -

 My employer's address is: - - - - - - - - - - - - - - - - - - - - - - - - -

 My employer's phone number is: - - - - - - - - - - - - - - - - - - - - - - -

 7. My present monthly household income, after federal income and social security taxes are deducted, is:

 $ _ _ _ _ _ _ ___

 8. I receive or expect to receive money from the following sources:

 AFDC $ per month beginning
 SSI $ per month beginning
 Retirement $ per month beginning
 Disability $ per month beginning
 Unemployment $ per month beginning
 Worker's Camp.$ per month beginning
 Other $ per month beginning

 LB-1108 (REV 11/15) RDA 11082
9. My expenses are: ' ; !•
 '

 Rent/House Payment $ per month Medical/Dental $ per month

 Groceries $ per month Telephone $ per month
 Electricity $ per month School Supplies $ per month
 Water $ per month Clothing $ per month
 Gas $ per month Child Care $ per month
 Transportation $ per month Child Support $ per month
 Car $ per month
 Other $ per month (describe:

10. Assets:

 Automobile $ _ _ __ _
 (FMV) - - - - - -- - - -
 Checking/Savings Acct. $ _ _ _ __
 House $ _ _ _ __
 (FMV) - - -- - - -- - -
 )
 Other $ _ _ _ __ Describe:_ _ _ __ _ _ _ _ __

11. My debts are:

 Amount Owed To Whom

I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete
and that I am financially unable to pay the costs of this appeal.

APPELLANT

Sworn and subscribed before me, a notary public, this

_ _ _ dayof _____________ ,20____

NOTARY PUBLIC

My Commission Expires:_ _ _ _ _ __ _

LB-1108 (REV 11/15) RDA 11082